*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. D. Robinson, Minor.

UNPUBLISHED
October 28, 2021

No. 356713
Wayne Circuit Court
Family Division
LC No. 2002-413933-NA

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor child, JR under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury and reasonable likelihood of harm if placed with parent), (i) (parental rights to one or more children have been terminated), and (j) (reasonable likelihood child will be harmed if returned to parent).[1] We affirm.

## I. FACTUAL BACKGROUND

JR was born to respondent on February 24, 2015. JR's putative father is Edward Dwayne Griffin. Respondent's parental rights to her two other children were terminated on June 15, 2007, because of abuse, neglect, lack of income, lack of a suitable living space, and noncompliance with mental health services. On March 11, 2015, the Michigan Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights under MCL 712A.19(b)(3) as to JR and remove JR from the home. The trial court removed JR from respondent on March 15, 2015, but did not grant DHHS' request to terminate her parental rights. The trial court ordered respondent to complete parenting classes, substance abuse counseling, individual counseling, and a psychological & psychiatric evaluation. On November 11, 2015, respondent was convicted of two counts of assault with intent to do great bodily harm less than murder in the

---

[1] Respondent also challenges the propriety of the trial court's termination of her parental rights under MCL 712A.19b(3)(g) (parent fails to provide proper care or custody). However, because MCL 712A.19b(3)(g) was, in fact, not one of the provisions on which the trial court found grounds to terminate her parental rights, we do not consider respondent's arguments as they pertain to MCL 712A.19b(3)(g).

Wayne Circuit Court, *People v Robinson*, Wayne Circuit Court Case No. 16-005397-01-FC. JR was placed in the custody of Griffin. After being released from prison in 2018, respondent was granted joint legal and physical custody of JR with Griffin on January 22, 2019.

On May 17, 2020, respondent's neighbor Natasha Veasy found JR running outside without any clothing other than his underwear. River Rouge Police Department Officer Van Deraa observed that JR's left eye was swollen and bruised and he had scratches on his neck. Officer Van Deraa testified that JR "said he did something bad so his mom punched him in the face." Officer Van Deraa observed respondent inside the house with empty pint bottles of vodka on the floor around her. Respondent was arrested on May 18, 2020, for child abuse and neglect.

DHHS petitioned the trial court to terminate respondent's parental rights to JR, claiming that it was "contrary to the welfare of" JR for him to stay with respondent "due to physical abuse and improper supervision." At a hearing on June 18, 2020, the trial court stated that it was "removing [JR] from the care and custody of [respondent]" and placing him with Griffin because it was "clearly contrary to the welfare of [JR] to be with his mother" in light of the "improper supervision but [also] . . . physical abuse and . . . mental abuse of a child if indeed she kicked him out." Adjudication was held on October 7, 2020. The trial court concluded that there was clear and convincing evidence to terminate respondent's parental rights MCL 712a.19b(3)(b)(*i*), (i), and (j). On January 6, 2021, the trial court found "via a preponderance of the evidence that a termination of [respondent's] parental rights is in [JR's] best interests." This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred in terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (i), and (j). We disagree.

### A. STANDARD OF REVIEW

"[I]ssues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). The issue of whether petitioner established statutory grounds for termination of parental rights was raised, addressed, and decided by the trial court.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014); see also MCR 3.977(K). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

### B. LAW AND ANALYSIS

Respondent argues that the trial court erred in terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (i), and (j). We disagree.

" 'To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence.' " *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014),

quoting *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). In this case, the trial court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(*i*), (i), and (j). As noted above, respondent also challenges the propriety of the trial court's termination of her parental rights under MCL 712A.19b(3)(g) (parent fails to provide proper care or custody). However, because MCL 712A.19b(3)(g) was not one of the provisions on which the trial court found grounds to terminate her parental rights, we do not consider respondent's arguments as they pertain to MCL 712A.19b(3)(g).

MCL 712A.19b(3)(b)(*i*) states, in relevant part:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence [that] . . . [t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home. [MCL 712A.19b(3)(b)(*i*).]

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*) because of respondent's "physical abuse," as well as the "reasonable likelihood that [JR] would be abused in the foreseeable future if placed in [respondent's] home." The trial court was correct.

The trial court correctly determined respondent's actions caused the physical injuries experienced by JR. MCL 712A.19b(3)(b)(*i*). The evidence strongly suggests the bruises and scratches on JR's body were caused by respondent. Officer Van Deraa testified JR "said he did something bad so his mom punched him in the face." JR told Child Protective Services (CPS) specialist James that respondent had been "angry with him" and had "choked him, scratched him and put him outside with no clothes on." JR also told James that "he did not feel safe" with respondent, and JR's fear of respondent further suggests she was responsible for the abuse he received. For instance, when respondent "was yelling and screaming" and "[b]eating on the cell" at the police station, JR was "afraid that [respondent] . . . was . . . getting out of the cell to come get him. And he stated he wanted to hide under the chair." Respondent's lack of an explanation for JR's injuries raises further questions regarding her responsibility. Respondent maintained she had been asleep the entire time, that she was not aware of any scratches or bruises on JR, and that she did not know how he could have been injured. Additionally, she claimed to have no memory of ever punching or scratching JR. In her words, "He's a boy . . . . [r]unning around." This argument appears dubious, however, in light of respondent's admission that there was no one else in the home at that time. In sum, the evidence suggests respondent's actions caused the physical abuse suffered by JR.

Next, the trial court did not err in determining that there is a reasonable likelihood that JR will suffer additional abuse if he is placed with respondent. MCL 712A.19b(3)(b)(*i*). In addition to the evidence of what happened on May 17, 2020, and respondent's failure to provide an alternative explanation for JR's injuries, other aspects of respondent's history suggest returning JR to respondent's home will be unsafe. Respondent's parental rights to her two other children were terminated in 2007 because of chronic neglect. Since then, she has gone through multiple court-ordered services, including mental health and substance abuse services, yet, as the trial court indicated, she appears not to have benefited from those. Indeed, she was intoxicated when Officer

Van Deraa contacted her on the day of the incident leading to JR's removal. Respondent and JR tested positive for marijuana and cocaine when JR was born. In sum, the neglect, physical abuse, mental health, and substance abuse issues have remained with respondent for many years and have shown no sign of being resolved. Returning JR to her home would put him in a position of likely harm.

Respondent argues in return that "there is [sic] abundant evidence that this was an isolated incident and [that] the child may be safe[l]y returned to [respondent's] home." To the contrary, there is abundant evidence that this was not an isolated incident. As noted above, the evidence suggests respondent has multiple chronic issues that do not lend themselves to the creation of a safe home environment for JR. The injuries suffered by JR, as well as respondent's propensity for physical abuse and neglect, would seem to not be isolated at all but rather part of a long-term struggle with a variety of serious issues. Of particular relevance to MCL 712A.19b(3)(b)(*i*) is respondent's propensity for violence, which appears to have been an ongoing issue. This is evidenced by her 2015 convictions of two counts of assault with intent to do great bodily harm less than murder, as well as the fact that she repeatedly went to Griffin's home and told him to stop trying to get custody of JR "if not somebody will get hurt." Her actions prompted Griffin to apply for multiple PPOs against her. In sum, the evidence suggests the events of May 17, 2020 were not an isolated incident and there is a reasonable likelihood that JR will suffer additional abuse if he is placed with respondent. MCL 712A.19b(3)(b)(*i*).

For these reasons, the trial court did not err in finding that there was clear and convincing evidence to terminate respondent's parental rights.

Because clear and convincing evidence of one statutory ground or termination is sufficient. *Brown/Kindle/Muhammad Minors*, 305 Mich App at 635, we need not address respondent's other statutory arguments.

### III. BEST INTERESTS

Respondent argues that the trial court erred by failing to properly consider the best interests of JR. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's determination regarding best interests for clear error. *White*, 303 Mich App at 713. "A trial court's decision is clearly erroneous 'if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

### B. LAW AND ANALYSIS

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). " 'The focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson*

*Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (internal citations omitted), quoting *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "Best interests are determined on the basis of the preponderance of the evidence." *LaFrance*, 306 Mich App at 733. In considering whether termination is in the best interest of the minor child, the trial court is permitted to consider the following factors:

> The child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . the length of time the child was in care, the likelihood that the child could be returned to [his or] her parents' home within the foreseeable future, if at all, and compliance with the case service plan. *Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (internal citations omitted).

The trial court found by a preponderance of the evidence that termination of respondent's parental rights was in JR's best interests under MCL 712A.19b(5). MCL 712A.19b(5) states:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court *shall* order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made. [MCL 712A.19b(5) (emphasis added).]

"The use of the word 'shall' denotes mandatory action." *Wolfenbarger v Wright*, ___ Mich App ___, ___; ___ NW2d ___ (issued 2/11/2021) (Docket No. 350668); slip op at 15.

The trial court reasoned that termination was in JR's best interests because respondent "has had numerous and extensive rehabilitation services spanning over 5 years and has not benefitted from those services," because the danger she posed to JR outweighed any benefit to continuing the parent-child relationship, and because "past experience has proved that a custody order alone is insufficient to protect [JR] from [respondent's] dysfunction and harm." In sum, the trial court concluded that a "termination of parental rights is necessary for the protection and well-being of [JR]."

An analysis of the three primarily relevant *Payne/Pumphrey/Fortson Minors* factors leads us to conclude that the trial court was correct.

The first relevant factor considers the child's bond to the parent. *Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64. In this case, the evidence shows JR's view of respondent is fearful and wary. Officer Van Deraa testified that JR, upon hearing respondent yelling and screaming at the police station, was "afraid that [respondent] . . . was . . . getting out of the cell to come get him. And he stated he wanted to hide under the chair." JR told CPS specialist James that "he did not feel safe" with respondent. The fact that JR was left outside with no clothes on, scratched and bruised, while respondent was inside intoxicated, further suggests the bond between them is not substantial. Respondent claims in her brief on appeal that JR was "very excited" to see her during the January 6, 2021 trial court proceedings, yet she offers no evidence for this claim. The first factor weighs in favor of termination.

The second relevant factor considers the parent's parenting ability. *Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64. The evidence suggests that respondent's parenting ability is insufficient. The facts leading to the present case show that respondent left JR outside, unsupervised, bruised, scratched, and without clothes on while she was intoxicated inside the house. Her parental rights to her two other children were terminated in 2007, suggesting her parenting struggles are not a new development. She has struggled with substance abuse for years, and the events of May 17, 2020, imply those issues are not resolved. These facts, among others, make it clear that respondent lacks the ability to properly and safely parent JR.

The third relevant factor considers the child's need for permanency, stability, and finality. *Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64. In addition to the factors cited above, all of which suggest that respondent is unable to provide JR with permanency, stability, and finality, respondent has been convicted of multiple crimes, and was previously incarcerated for three years. Any future convictions or incarcerations would take her away from JR yet again and would obviously cause her to be unable to provide a permanent, stable home for him. This is compounded by respondent's mental health struggles. There is no evidence that JR's current living situation with Griffin is unsafe or unstable. He has now been living with his father for a substantial amount of time. In sum, the permanency, stability, and finality that are in JR's best interests are not possible with respondent.

On appeal, respondent struggles to make a coherent argument, citing the fact that she "submitted herself to the clinic evaluation," and that she has been going through a variety of treatments presumably as support for her claim that termination of her parental rights would not be in JR's best interests. But she fails to complete the argument, leaving us with nothing more than the bare statement that she did, or is doing, those things. She then claims that, according to her attorney, she "is able to have services accommodated to her disability and her needs due to the change of law" and cites *In re Hicks/Brown Minors*, 315 Mich App 251, 264; 890 NW2d 696 (2016). She does not explain how the mere fact that she is able to have services accommodated to her disability weighs against termination. Additionally, the portion of *In re Hicks/Brown Minors* she cites is simply a discussion of existing law on termination of parental rights that describes when termination is appropriate under MCL 712A.19b(3) and explains what "reasonable efforts" are. *In re Hicks/Brown Minors*, 315 Mich App at 264. Respondent provides no explanation as to how this exposition of the applicable law supports her presumptive claim that her ability to have services accommodated to her disability weighs against termination of her parental rights to JR. Additionally, unlike *In re Hicks/Brown*, respondent did not request additional or altered services as an accommodation for her mental health needs before the termination hearing. *In re Hicks/Brown*, 500 Mich at 89-90. Finally, respondent claims that she "is an older mother who understands that [sic] the relationship with [JR] is now and she would not be able to regain it. She wants to complete services." This appears to be a statement that respondent desires to complete the court-ordered services and treatments that were previously ordered. Again, respondent fails to state how this is relevant to the determination of what is in JR's best interests. Historically, it has always been clear that the best interests of the child predominate over the preferences or needs of the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013) ("Michigan's termination-of-parental-rights statute indicates that the focus at the best-interest stage has always been on the child, not the parent.")

Finally, respondent implies termination of her parental rights is unnecessary due to the placement of the custody of JR with Griffin as a relative. First, JR's placement with Griffin did not preclude the incident which led to the termination proceedings, suggesting removal of custody of JR from respondent is insufficient to protect him. Second, respondent's argument mistakenly suggests that JR's placement with Griffin weighs against termination. In *In re Olive/Metts*, 297 Mich App at 43, this Court stated:

> [B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. . . . A trial court's failure to explicitly address whether termination is appropriate in light of the child[]'s placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [Quotation marks and citations omitted.]

Respondent fails to recognize, however, that MCL 712A.13(a)(1)(j) defines a "relative" as someone other than a parent. Because JR was placed with his father, relative placement was not a relevant consideration. *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016).

For these reasons, the trial court did not err in finding by a preponderance of the evidence that termination of respondent's parental rights was in JR's best interests.

## IV. CONCLUSION

Affirmed.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Deborah A. Servitto